**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

KARRY WHITTEN, on behalf of herself and others similarly situated,

*Plaintiff,*

v.

RESURGENT CAPITAL SERVICES, LP;
LVNV FUNDING LLC;
SHERMAN FINANCIAL GROUP, LLC;
MESSERLI & KRAMER, P.A.;
and JOHN DOE LAW FIRMS 1–100,

*Defendants.*

**Case No. 8:25-cv-00661**

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

**(JURY TRIAL REQUESTED)**

Plaintiff Karry Whitten ("Plaintiff"), by and through undersigned counsel, brings this Second Amended Class Action Complaint against Defendants Resurgent Capital Services, LP ("Resurgent"); LVNV Funding LLC ("LVNV"); Sherman Financial Group, LLC ("Sherman"); Messerli & Kramer, P.A. ("Messerli"); and John Doe Law Firms 1–100 (collectively, "Defendants"), prusuant to FRCP 15.1(a) and alleges the following based upon personal knowledge, investigation of counsel, and information and belief:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§

1681 *et seq. (congressional findings).* Jurisdiction is also conferred by 15 U.S.C. § 1692k(d) and 15 U.S.C. § 1681p, and supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

3. Plaintiff Karry Whitten is a natural person and citizen of the State of Nebraska residing in Omaha, Douglas County, Nebraska. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

4. Defendant Resurgent Capital Services, LP ("Resurgent") is a South Carolina limited partnership with its principal place of business at 55 Beattie Place, Suite 110, Greenville, South Carolina 29601. Resurgent is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and a "collection agency" as defined by Neb. Rev. Stat. § 45-602(2)(a). Resurgent's principal business is the collection of debts originally owed to creditors other than Resurgent. Resurgent does not originate any consumer debt. Resurgent holds Nebraska Collection Agency License No. 1170.

5. Resurgent is a "furnisher" of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2. Resurgent furnishes information

regarding consumer accounts to Experian, Equifax, TransUnion, and other consumer reporting agencies.

6. Resurgent is a subsidiary of Sherman Financial Group, LLC, and an affiliate of LVNV Funding, LLC. LVNV has no employees, no offices, and no operations. Every act attributed to LVNV—every collection call, demand letter, lawsuit, declaration, credit report, and decision to litigate, settle, or pursue arbitration—is performed by Resurgent.

7. Resurgent acts as the master servicer for LVNV, managing all aspects of the debt collection process including: account management; correspondence; credit reporting; compliance; retention and direction of litigation counsel; preparation of affidavits and declarations; preparation of chain-of-title documents; the decision whether to pursue litigation, arbitration, or other means; and the operation of proprietary analytics systems, decision engines, and predictive models.

8. Resurgent's own publicly posted job listings and Linked In profiles of its employees confirm the scope of its operations. A "Specialist I, Portfolio Support" posting describes responsibilities including the "affidavit process" and preparation of documents "for court use," requiring proficiency in "SQL, Access, Excel, [and] Visio"—database and data analysis tools—not legal training. A "Director, Digital Analytics" posting describes the "development and execution of a decision engine for daily campaigns" using "advanced analytics and predictive modeling" and "machine learning" on datasets exceeding 10 million records. On Linked In account of a

Resurgent Employee holding a position of "Data Scientist II" state that the employee [l]ed the development and deployment of payer probability and liquidatin rate GBM models[1] to improve revenue forecasting for acquired debt. These Models provided highly accurate revenue predictions, enabling senior management to make data-driven decisions strategic decisions and optimize financial planning."

Activity

209 followers

+ Follow

Chonghao has no recent posts

Recent posts Chonghao shares will be displayed here.

Show all →

Experience

Resurgent Capital Services
Full-time · 3 yrs 11 mos
Greenville, South Carolina, United States · On-site

Data Scientist II
Jan 2024 - Present · 2 yrs 3 mos

• Designed and developed an email hard bounce probability model and automated pipeline using XGBoost in the Databricks environment, enhancing email campaign effectiveness and reducing undeliverable emails by 30%.
• Improved prediction accuracy from 65% to 95% by developing multiple machine learning models in R and SQL for portfolio management and strategy optimization. Leveraged credit bureau, linked account, and transaction data to improve revenue forecasting in the Debt Collection Revenue Prediction Model Design project.

SQL, Machine Learning and +2 skills

Data Scientist
May 2022 - Jan 2024 · 1 yr 9 mos

•Led the development and deployment of advanced payer probability and liquidation rate GBM models to improve revenue forecasting for acquired debt. These Models provided highly accurate revenue predictions, enabling senior management to make data-driven strategic decisions and optimize financial planning.
• Increased operational efficiency by 80% by developing model monitoring tools that automate data extraction and cleaning, seamlessly integrating with Power BI dashboards. These tools provide real-time insights into external factors and seasonal trends affecting portfolio management, allowing for detailed analysis across Portfolios, Sellers, States, and Time Periods.
• Engineered an automated model refitting tool, enabling dynamic model updates with feature and parameter adjustments, resulting in improved prediction accuracy and mitigation of performance degradation during periods of data distribution shifts (e.g., COVID-19).

SQL, Machine Learning and +2 skills

[1] According to Google a GBM is a "Gradient Boosted Machine" which "is a powerful, iterative machine learning algorithm that builds a strong predictive model by combining multiple weak learners" each of which "focuses on correcting the errors (residuals) of the previous tree to minimize losses."

9. Upon information and belief, Resurgent also functions as an unregistered consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f). Resurgent regularly assembles and evaluates consumer credit information—collecting data from original creditors, enriching it with third-party data sources including U.S. Census data and skip-tracing services, processing it through predictive models, and furnishing the assembled and evaluated information to litigation counsel and other collection agents it employs and manages. Despite performing these CRA functions, Resurgent does not provide consumers with any of the rights associated with CRA status.

10. Defendant LVNV Funding LLC ("LVNV") is a Delaware limited liability company with its principal place of business at 55 Beattie Place, Suite 110, Greenville, South Carolina 29601. LVNV is a debt buyer that purchases portfolios of charged-off consumer debt. LVNV is a subsidiary of Sherman Originator LLC, which is owned by Defendant Sherman Financial Group, LLC. LVNV is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and a "furnisher" of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2. LVNV filed the collection action against Plaintiff in Douglas County Court, Case No. CI 22-16729, and has thereby submitted to the jurisdiction of Nebraska courts.

11. Defendant Sherman Financial Group, LLC ("Sherman") is a South Carolina limited liability company with its principal place of business in Charleston, South Carolina. Sherman is a privately held financial services holding

company founded in 1998 that designs, funds, and directs the corporate and workflow architecture through which Resurgent and LVNV operate. Sherman has invested over $7 billion in consumer debt portfolios. Sherman's corporate structure—in which LVNV holds nominal title to debt portfolios while Resurgent performs all collection functions under LVNV's name—was designed by Sherman and its management and serves to conceal Resurgent's role from consumers, courts, and regulators.

12. Defendant Messerli & Kramer, P.A. ("Messerli") is a Minnesota professional association with offices in Minneapolis and Plymouth, Minnesota. Messerli maintains a consumer collections practice and regularly files collection complaints in Nebraska courts on behalf of LVNV at the direction of Resurgent. Messerli is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Under *Heintz v. Jenkins*, 514 U.S. 291 (1995), the FDCPA applies to attorneys and law firms that regularly engage in consumer debt collection activity, including litigation conduct.

13. Defendants John Doe Law Firms 1–100 are law firms and/or attorneys, the identities of which are presently unknown to Plaintiff, who at the direction of Resurgent filed collection complaints, declarations, and other litigation documents in courts throughout the United States on behalf of LVNV during the Class Period. Plaintiff will seek leave to amend to identify these Defendants by name upon obtaining such information through discovery.

## FACTUAL ALLEGATIONS

### A. Background

14. At all times relevant, Plaintiff had a Citibank credit card account (the "Citibank Account"). Plaintiff's account was governed by successive card agreements, including an October 2016 Card Agreement and an October 2020 Card Agreement. The 2020 Card Agreement, by its own terms, stated: "This Card Agreement (Agreement) is your contract with us."

15. On or about a date unknown to Plaintiff, Citibank assigned Plaintiff's Account and "all rights" to LVNV, including any right to compel arbitration. Resurgent thereafter managed and directed all collection activities.

16. On or about September 15, 2022, LVNV, through counsel retained and directed by Resurgent, filed a collection lawsuit in Douglas County Court, Case No. CI 22-16729 (the "County Court Litigation").

17. The County Court Litigation was directed and managed by Resurgent at all times. Every decision was made by Resurgent.

### B. Resurgent's Systematic Concealment of Its Role

18. Throughout the County Court Litigation and the Federal Litigation, Resurgent never appeared in its own name. Resurgent never filed a document

bearing its name. Resurgent never disclosed to any court or to Plaintiff that it was the entity preparing declarations, directing litigation, retaining counsel, and making every material decision. Every document Resurgent prepared was attributed to someone else.

19. This concealment is Resurgent's business model. Resurgent is designed to be invisible to the consumers it collects from in litigation. The concealment from consumers shields Resurgent from direct liability and prevents consumers and courts from identifying the true source of false declarations and misleading representations.

**C. The Affidavit Mill**

20. Resurgent operates an "affidavit mill"—a high-volume document production operation in which Resurgent employees prepare affidavits and declarations attributed to named declarants who did not prepare them and who do not personally review the underlying business records.

21. Upon information and belief, Resurgent employees use Adobe Acrobat or similar software to prepare declarations, insert consumer-specific information into templates, and electronically apply signatures on behalf of named declarants.

22. Upon information and belief, named declarants such as Kelly Booth authorize Resurgent to prepare and sign declarations on their behalf without personally reviewing each declaration or the underlying records.

23. The volume of declarations bearing Kelly Booth's signature and the practical constraints of Resurgent's management created workflow architecture makes it physically impossible for her to have personally reviewed each one.

24. This robo-signing is the direct cause of the errors and inaccuracies in declarations filed in Plaintiff's cases and others.

25. In 2025 alone, LVNV was a named plaintiff in approximately 9,814 collection actions filed in Nebraska courts. Upon information and belief, the pleadings, declarations, and other documents used in those cases were prepared and managed by Resurgent employees using the standardized processes described above.

## D. The State Court Complaints as Instruments of Concealment

26. Resurgent's identity concealment begins with the state court complaint itself. Each complaint filed at Resurgent's direction names LVNV as the sole plaintiff and contains no reference whatsoever to Resurgent Capital Services, LP. A consumer receiving the complaint reasonably concludes that LVNV—the named plaintiff—is the entity pursuing the claim. The consumer never learns that a separately incorporated, separately licensed collection agency selected the account for litigation, prepared the supporting documentation, determined the litigation strategy, directed counsel to file the action, and compiled public and non-public data to identify the consumer as a good target for collection litigation.

27. Under *Heintz v. Jenkins,* 514 U.S. 291 (1995), the FDCPA applies to attorneys who regularly engage in consumer debt collection activity, including their litigation conduct. State court complaints filed at the direction of a debt collector in connection with debt collection are communications subject to the FDCPA.

28. Although § 1692e(11) of the FDCPA exempts "a formal pleading made in connection with a legal action" from the mini-Miranda disclosure requirement, Congress included no such exemption in § 1692e(14) (the true name requirement) or § 1692e(10) (the prohibition on false or deceptive means). Under the canon of *expressio unius est exclusio alterius,* Congress's deliberate decision to exempt formal pleadings from subsection (11) but not from subsections (10) or (14) confirms that the true name requirement and the prohibition on deceptive means apply with full force to litigation filings—including complaints.

29. In *Fritz v. Resurgent Capital Services, LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013), the court held that Resurgent and LVNV materially misrepresented their identities in debt collection. The court reasoned that the entity to which a debtor owes money affects the debtor in the most basic ways. The identity concealment at issue here is the mirror image of *Fritz*: in *Fritz*, Resurgent falsely identified itself as the debt owner; here, Resurgent's employees falsely identify themselves as LVNV agents without disclosing their employment with Resurgent.

**E. The County Court Litigation and False Chain of Title**

30. Resurgent prepared and caused LVNV to file a Summary Judgment Affidavit misrepresenting the chain of title, attaching documents from a Sherman Brands Costco account rather than Plaintiff's Citi/AAdvantage account.

31. LVNV litigated the County Court Litigation for over two years—filing a complaint, pursuing discovery, moving for summary judgment—without ever invoking arbitration.

**F. The Federal Litigation and the Four False Declarations**

32. When Plaintiff sued LVNV and Citibank in this district (*Whitten v. Citibank, N.A.*, Case No. 4:24-cv-03145), Resurgent instructed counsel to dismiss the County Court Litigation.

33. Resurgent caused the dismissal because its affiliates must indemnify Citibank, and because Resurgent believed eliminating the state court action would force arbitration and prevent class claims.

34. Resurgent prepared the first Declaration of Kelly Booth (November 15, 2024). It was inaccurate: it stated Booth "prepared" it; it listed the wrong card number; it attached the wrong (2016) card agreement; it falsely stated Plaintiff could opt out of arbitration; and it stated records were kept in Citibank's ordinary course when they were kept in Resurgent's systems.

35. Resurgent prepared the Supplemental Declaration, which corrected the card number but continued the wrong agreement and false opt-out representation.

36. When Plaintiff raised the 2020 Card Agreement, Citibank's counsel—relying on Resurgent's information—called it "mythical." This was false. The 2020 agreement existed, and Resurgent knew it.

37. Resurgent prepared the Third Declaration, which again omitted the 2020 agreement.

38. Only after the Magistrate Judge ordered production did Resurgent prepare a fourth declaration (Filing No. 56-1) finally attaching the 2020 agreement—but then falsely declared the 2016 arbitration provision was still "operative" and "remained the same."

39. The fourth declaration was false because: (a) the 2020 agreement states "This Card Agreement (Agreement) is your contract with us," superseding the 2016 agreement; and (b) the 2020 version eliminated the opt-out right—a material change.

40. The exhibits document at least four major rounds of amendments between 2016 and 2020, including a product change from Platinum Select to Executive World Elite, multiple fee increases, addition of the Citi Flex Plan feature, and a completely new October 2020 agreement for a different account number

(ending 4335). Despite all of this, Resurgent prepared declarations swearing the account "remained unchanged."

41. The pattern demonstrates that Resurgent's operations are designed to produce declarations supporting whatever litigation position is desired. When one false declaration is challenged, Resurgent pivots to a new false narrative.

## G. Citibank's Repudiation of the Governing Agreement

42. Citibank, through declarations prepared by Resurgent, insists the 2016 agreement "is controlling." This repudiates the 2020 agreement that states "This Card Agreement (Agreement) is your contract with us."

43. Resurgent caused a creditor to simultaneously claim a superseded agreement governs, disavow its own declared contract, and use the superseded agreement to compel arbitration—leaving the consumer subject to whichever version serves the creditor's interest at any moment.

## H. Waiver and Extinguishment of Arbitration Rights

44. LVNV waived its arbitration rights by litigating for over two years without invoking arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) (no prejudice required).

45. Citibank's assignment of "all rights" to LVNV extinguished Citibank's arbitration rights. *In re Wholesale Grocery Prod. Antitrust Litig.*, 850 F.3d 344, 350–

351 (8th Cir. 2017) (where a party assigns agreements including an arbitration clause, the assignor's right to compel arbitration is extinguished).

46. Citibank has not substantively addressed either holding. Its claim that the waiver argument was raised "for the first time" was retracted in Filing No. 58 in the Citibank case.

47. Resurgent knew neither Citibank nor LVNV could compel arbitration but prepared four false declarations anyway.

## I. The Dual-Purpose Declaration Infrastructure

48. On information and belief, the Kelly Booth declarations serve a dual purpose within Defendants' systematic collection apparatus and workflow architecture. First, declarations are used to initiate and prosecute collection actions in state courts. Second, when consumers contest those collection actions or bring counterclaims—particularly class claims—the same declaration infrastructure is deployed to support motions to compel individual arbitration, thereby insulating Defendants' practices from class-wide scrutiny.

49. The accuracy of these declarations is immaterial to the objectives of the collection apparatus because their purpose is not to establish truth but to generate procedural leverage at every stage of the collection pipeline. If a declaration is challenged, the apparatus produces a "corrected" declaration. If the correction is challenged, another "corrected" declaration follows. Each iteration introduces new

errors while perpetuating the fundamental misrepresentations necessary to maintain the procedural posture most favorable to Resurgent—whether that is a default judgment in state court or compelled individual arbitration in federal court.

50. The incentive structure is self-reinforcing. This class action and cases like it represent an existential threat to Resurgent's business model because they expose the systematic nature of the declaration deficiencies. Compelled individual arbitration eliminates the class mechanism that would reveal the scope of the problem. Thus, Resurgent has every incentive to deploy its declaration infrastructure to support arbitration motions regardless of the accuracy of the underlying facts—because the cost of an inaccurate declaration in a single case is trivial compared to the cost of class-wide liability.

**J. Resurgent's Concealment and the Claim-Splitting Paradox**

51. Resurgent is not a party to *Whitten v. Citibank*. Resurgent has never appeared, filed a document, intervened, or disclosed its existence in that action.

52. To the extent Resurgent contends Plaintiff's claims should have been brought in the Federal Litigation, such contention is itself an admission of the pervasive involvement Resurgent has spent both proceedings concealing. Claim splitting requires privity. The defense requires Resurgent to admit what it has concealed: that it directs the litigation, prepares the declarations, and makes every decision attributed to Citibank and LVNV.

53. Resurgent cannot maintain two irreconcilable positions:

> Position A (to avoid FDCPA liability): "We are just a servicer. We did not collect any debt."
>
> Position B (to obtain dismissal): "We are so intertwined that Plaintiff should have sued us in the Citibank case."

54. If Position B is true, then Position A is false—and that falsehood is itself an FDCPA violation. If Position A is true, there is no privity and claim splitting fails.

55. This is the final layer of concealment: Resurgent concealed its involvement, concealed its role in preparing false declarations, concealed its identity from the court, and now seeks to use that concealment as the basis for a procedural defense to the claims arising from the concealment itself.

## K. The Timeliness Defense as an Admission of Fraud

56. To the extent Resurgent contends that Plaintiff's claims are untimely—that Plaintiff should have discovered Resurgent's role and sued earlier—that contention is an implicit admission that there was something to discover: conduct that was hidden, wrongful, and required "catching." No party needs to be "caught" engaged in legitimate business practices.

57. To the extent Resurgent contends that Plaintiff's claims are untimely, that defense is self-defeating. Resurgent designed every consumer-facing document

— every complaint, every declaration, every credit report — to attribute its own actions to LVNV. A party that builds a system to ensure consumers never learn its name cannot then argue that the consumer should have learned it sooner. If the concealment worked, equitable tolling applies to every act. If it didn't, the claim is timely because Resurgent created false declarations of Kelly Booth well within the one-year FDCPA statute of limitations. Either way, Resurgent cannot invoke the very concealment that gives rise to Plaintiff's claims as a shield against those claims.

## L. The Affidavit Mill's Corruption of the Litigation Process

59. In *Whitten v. Citibank*, Citibank is represented by experienced counsel at a sophisticated law firm with access to Citibank's own records. Yet Citibank's through that counsel—relying on declarations and information prepared and provided by Resurgent—made the following representations to this Court:

(a) Counsel called the 2020 Card Agreement—a document that existed in Citibank's own records and was eventually produced under court order—"mythical."

(b) Counsel filed three successive rounds of Kelly Booth declarations, each attaching a 2016 agreement that had been plainly superseded, without ever acknowledging the 2020 agreement's existence.

(c) Counsel represented that the arbitration provision "remained the same" when the 2020 agreement eliminated the opt-out right—a material change relying on a fourth Kelly Booth Declaration which was factually and legally false.

(d) Counsel asserted that the waiver argument was raised "for the first time" and was forced to retract that representation in Filing No. 58.

60. If Resurgent's affidavit mill can cause a major bank's sophisticated and respected litigation counsel to make false representations to a federal judge and be forced to retract them, no pro se consumer, no county court judge processing hundreds of LVNV default judgment applications, and no class member has any realistic possibility of detecting Resurgent's fraud from the face of the filings.

61. This Court has now been assigned both *Whitten v. Citibank* and this action. The Court is therefore in a unique position to evaluate the full scope of Resurgent's conduct.

## M. Algorithmic Profiling and Litigation Routing

62. Upon information and belief, Resurgent utilizes third-party data analytics products, including but not limited to scoring and segmentation tools offered by consumer reporting agencies such as Experian, to score and segment consumer accounts based on collectability, propensity to pay, and expected recovery amount. These products include but are not limited to Experian's "PriorityScore for

Collections," "RecoveryScore 2.0," "Collection Advantage" platform, "Collection Triggers," and "PowerCurve Collections"—a full decisioning platform that integrates data, analytics, and automated workflow management.

63. These third-party scoring tools use over sixty industry-specific debt recovery scoring models to evaluate consumer accounts. The models process consumer credit data, behavioral data, demographic data including U.S. Census information, and account-level data to generate numerical scores that predict the likelihood of payment and expected recovery amounts. The system automatically determines a "treatment strategy" for each account, routing consumers through phases from Pre-Delinquency to Early Collections to Mid-Term to Late Stage to Litigation and Recovery.

64. On information and belief, Resurgent then also processes the output of these third-party scoring tools through its own proprietary decision engine—described by Resurgent's own employees as "predictive models" for "legal tech" and "optimal strategy selection"—to determine the final treatment strategy for each account. This double processing—first by Experian's scoring models, then by Resurgent's own decision engine—constitutes two separate layers of profiling, each of which independently triggers the Nebraska Data Privacy Act's profiling provisions. Resurgent's employees confirm this process:

**Jiarui Cai** · 3rd

Data scientist at Resurgent Capital Services

Greenville, South Carolina, United States · Contact info

500+ connections

Message | + Follow | ···

Resurgent Capital Services

Georgia Institute of Technology

## About

Highly analytical and process-oriented data scientist with in-depth knowledge of manipulation, statistical testing, machine learning and visualization. Solid statistical programming experience in Python, R, SQL and Arena. Experienced in analyzing business data, location system data (RTLS), Credit Bureau data (Equifax, Experian, and TransUnion) and healthcare data (EHR) sets. Strong teamwork spirit and committed to the perfection of given assignments.

65. This multi-layered automated processing constitutes "profiling" as defined by the Nebraska Data Privacy Act, Neb. Rev. Stat. § 87-1102(25): "solely automated processing of personal data to evaluate, analyze, or predict personal aspects concerning an identified or identifiable natural person's economic situation, reliability, behavior, location, or movements."

66. The treatment-strategy determination—specifically, the decision to route a consumer's account to litigation—produces a "legal or similarly significant effect concerning the consumer" within the meaning of Neb. Rev. Stat. § 87-1107. Being sued is the paradigmatic legal effect.

67. Consumers whose accounts are processed through this pipeline—including Plaintiff—are not informed that their personal data is being subjected to

automated decisioning. They are not provided an opportunity to opt out of profiling as required by Neb. Rev. Stat. § 87-1107. Resurgent has not, on information and belief, conducted or documented data protection assessments for this processing as required by Neb. Rev. Stat. § 87-1116.

68. On information and belief, Resurgent will invoke the Gramm-Leach-Bliley Act entity exemption under Neb. Rev. Stat. § 87-1103(4)(b). However, the output of the third-party scoring models—the treatment-path recommendation, the litigation-routing decision—is not "data subject to" Title V of the GLBA. It is a new analytical product created through profiling. When Experian processes raw credit data through PriorityScore and outputs a collection treatment recommendation, that output transcends the raw financial data protected by the GLBA. The GLBA was designed to protect financial transactions, not to exempt automated litigation-targeting decisions from consumer protection oversight.

## N. The Nebraska Data Privacy Act Demand and Defendants' Response

69. On January 5, 2026, Plaintiff sent a comprehensive NDPA rights request via certified mail to LVNV Funding LLC, Resurgent Capital Services, LP, and Sherman Financial Group, LLC, exercising her rights under Neb. Rev. Stat. §§ 87-1107 through 87-1111. The request demanded: confirmation of data processing; access to personal data; identification of all databases and systems; identification of all third-party recipients; disclosure of whether data protection assessments had

been conducted; and the exercise of opt-out rights for targeted advertising, sale of personal data, and profiling in furtherance of decisions producing legal or similarly significant effects.

70. Plaintiff's letter specifically anticipated a blanket GLBA exemption claim and demanded that Resurgent identify each category of data and explain why each qualifies as "nonpublic personal information" under GLBA. The letter specifically identified categories of data that cannot be GLBA-exempt, including Census data, skip-tracing data, behavioral data, browsing history, engagement metrics, and inferences or profiles derived from combining account data with non-account sources.

71. Under Neb. Rev. Stat. § 87-1108, Resurgent was required to respond within forty-five days. Resurgent failed to respond. Sherman Financial Group LLC refused to accept the certified mailing. LVNV Funding LLC failed to respond. The failure of all three entities to respond is consistent with and further evidence of the concealment scheme alleged herein.

## O. Messerli & Kramer's Role in Resurgent's Collection Scheme

72. Messerli, through its Plymouth, Minnesota office, serves as one of Resurgent's primary outside counsel for the filing of collection complaints in Nebraska courts on behalf of LVNV. Upon information and belief, Messerli files hundreds or thousands of collection actions annually in Nebraska at Resurgent's direction.

73. Messerli's attorneys personally signed or caused to be filed collection complaints, declarations, and other documents in Nebraska courts on behalf of LVNV. Each attorney who filed such documents knew or should have known that Resurgent, not LVNV, was the entity directing and managing the collection.

74. Messerli participated in the identity concealment by filing complaints that named only LVNV as plaintiff without disclosing Resurgent's role, in violation of 15 U.S.C. § 1692e(14), and by filing declarations it knew or should have known were not independently prepared by the named declarants, in violation of 15 U.S.C. § 1692e(10).

75. Upon information and belief, Messerli's engagement by Resurgent is governed by a flat-fee or volume-based compensation arrangement. Messerli does not exercise independent professional judgment regarding the merits of individual collection actions; rather, it files complaints based on account data and litigation packages prepared and transmitted by Resurgent. This arrangement places Messerli under Resurgent's "management," thereby eliminating the attorney exemption under Neb. Rev. Stat. § 45-602(3)(i) and subjecting Messerli to licensing requirements under the Nebraska Collection Agency Act.

**P. Plaintiff's Demand for Debt Verification**

76. On February 6, 2026, Plaintiff sent Resurgent a written demand for debt verification pursuant to 15 U.S.C. § 1692g(b), formally disputing the debt in its

entirety and demanding that Resurgent cease all collection activity pending verification.

77. Resurgent has failed to respond. Resurgent has not provided verification of the debt, has not identified the entities involved in the collection, and has not ceased collection activity as required by 15 U.S.C. § 1692g(b). Upon information and belief, Resurgent has continued to report the disputed debt to consumer reporting agencies.

## Q. Credit Reporting and Concealment in the Furnishing Process

78. As of December 11, 2025, the LVNV tradeline on Plaintiff's credit report reflects: Account Number 5218760067954335; reporting entity "LVNV Funding"; status "Open / Collection Account"; balance $24,956; original creditor "Citibank N.A." The tradeline is reported to all three consumer reporting agencies. The contact field reads: "C/O Resurgent Capital Services, PO Box 1269, Greenville, SC 29602." The tradeline thus simultaneously identifies LVNV as the reporting entity while disclosing in its own contact information that Resurgent is the entity actually managing the account—a microcosm of the identity concealment scheme.

79. Plaintiff's Equifax credit report contains a separate collection tradeline reported by "Resurgent Receivable" (Account Number 4707930540132582, balance $859). On this smaller debt, Resurgent reports under its own name. On the larger LVNV debt ($24,956), Resurgent conceals its identity behind LVNV's name. The

selective disclosure proves that Resurgent is capable of identifying itself and deliberately chooses not to do so when collecting debts purchased by LVNV.

80. On or about February 7, 2026, Plaintiff disputed the LVNV/Resurgent tradeline directly with Experian, Equifax, and TransUnion. Upon information and belief, the consumer reporting agencies transmitted notice of Plaintiff's dispute to Resurgent, triggering Resurgent's duty to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b).

81. Given that Resurgent's data systems are the same systems that produced the false declarations, false chain-of-title documents, and incorrect card agreements described herein, any investigation conducted solely through those systems is not a "reasonable" investigation within the meaning of the FCRA.

**R. Plaintiff's Concrete Injuries**

82. The statutory violations alleged herein are not bare procedural injuries. Defendants' conduct caused Plaintiff concrete, tangible harm that bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 424 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

83. Plaintiff suffered concrete litigation harm. She was forced to defend against a collection action supported by declarations that concealed the identity of the entity actually directing the litigation. In the related federal action, Plaintiff

was forced to oppose four separate Kelly Booth declarations, each bearing the hallmarks of Resurgent's affidavit mill operation, requiring retention of counsel, analysis of each declaration, preparation of responsive briefing, and court appearances.

84. Plaintiff suffered concrete informational injury. Defendants' systematic concealment deprived Plaintiff of information to which she was legally entitled, including: the identity of the entity actually collecting the debt; whether Resurgent was properly licensed; the basis to assert FDCPA claims against the actual debt collector; and the ability to make informed decisions about settlement, litigation strategy, and assertion of her statutory rights.

85. Plaintiff suffered concrete reputational and credit-related harm. Resurgent, furnishing information in LVNV's name, caused a $24,956 collection tradeline to appear on Plaintiff's credit reports containing inaccurate and incomplete information. This information has been disseminated to third-party businesses who use it to decide whether Plaintiff is worthy of receiving credit.

86. Plaintiff suffered concrete financial harm, incurring attorney's fees and litigation costs defending against the collection action and opposing the fraudulent arbitration motion, with attendant risk of money judgment, wage garnishment, and bank levy.

## S. Equitable Tolling Based on Fraudulent Concealment

87. Resurgent's systematic concealment of its identity and role—as detailed throughout this Complaint—constitutes fraudulent concealment sufficient to toll the applicable statutes of limitations for all claims asserted herein.

88. No reasonable consumer could have discovered Resurgent's role from the face of any filing, communication, or document. As demonstrated in the Citibank litigation, even Citibank's own sophisticated counsel was led to make false representations to this Court—confirming that if experienced litigation attorneys cannot detect the defects in Resurgent's declarations, no consumer could.

89. Plaintiff filed this action within a reasonable time after discovering Resurgent's role through independent investigation by counsel.

90. The concealment was systematic, uniform, and class-wide. Every class member was subjected to the same concealment: the same LVNV-branded filings, the same declarations falsely claiming personal preparation, the same absence of any mention of Resurgent. Equitable tolling therefore applies on a class-wide basis.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of FDCPA § 1692e — False or Misleading Representations

*(On Behalf of All Classes and Subclasses)*

91. Plaintiff incorporates by reference all preceding paragraphs.

92. Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The FDCPA imposes strict liability.

93. Resurgent violated § 1692e by: (a) causing declarations falsely stating named declarants "prepared" them and "personally reviewed" records; (b) causing false chain-of-title documents; (c) causing dissemination of incorrect card agreements; (d) causing false opt-out representations; (e) concealing Resurgent's identity; (f) misrepresenting that Citibank could compel arbitration when that right was assigned and waived; and (g) preparing declarations supporting repudiation of the governing 2020 agreement.

94. Resurgent violated § 1692e(8) by failing to communicate to consumer reporting agencies that the debt is disputed.

95. Each of the four Kelly Booth declarations constitutes a separate violation. Each was prepared by Resurgent, contained material misrepresentations, and was filed in connection with debt collection.

## COUNT II

### Violation of FDCPA § 1692e(10) — Deceptive Means

*(On Behalf of All Classes and Subclasses, Including the Profiling Subclass)*

96. Plaintiff incorporates by reference all preceding paragraphs.

97. Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

98. Resurgent's undisclosed algorithmic profiling of consumers—processing their personal data through third-party scoring tools including but not limited to Experian's PriorityScore for Collections, RecoveryScore 2.0, and Collection Advantage platform, and through Resurgent's own proprietary decision engines—constitutes a deceptive means of collecting a debt. The NDPA's data protection assessment requirement (Neb. Rev. Stat. § 87-1116) confirms materiality.

99. The deceptive means extends to the entire collection apparatus: Resurgent profiled Plaintiff, selected litigation as the collection strategy, retained counsel, prepared false declarations, directed the filing of those declarations, and concealed its role at every step—all without disclosing to Plaintiff that an

undisclosed entity was orchestrating the collection through automated decision-making.

## COUNT III

### Violation of FDCPA § 1692e(14) — True Name Violation

*(On Behalf of All Classes and Subclasses)*

100. Plaintiff incorporates by reference all preceding paragraphs.

101. Section 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." By operating exclusively in LVNV's name and concealing its own identity, Resurgent violated this provision. Messerli participated in this violation by filing complaints naming only LVNV without disclosing Resurgent's role.

## COUNT IV

### Violation of FDCPA § 1692e(11) — Failure to Disclose Debt Collector Identity

*(On Behalf of the Nationwide Class and Identity Concealment Subclass)*

102. Plaintiff incorporates by reference all preceding paragraphs.

103. Section 1692e(11) requires that subsequent communications disclose that "the communication is from a debt collector." Declarations, affidavits, and other supporting documents filed in connection with litigation are not "formal pleadings" and remain subject to § 1692e(11)'s disclosure requirements. Resurgent, as the "debt collector" in the collection relationship, was never identified in any declaration or supporting document.

## COUNT V

### Violation of FDCPA § 1692f — Unfair Practices

*(On Behalf of All Classes and Subclasses)*

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

106. Resurgent's practices—systematic false declarations, false chain-of-title documents, identity concealment, successive pivot-to-new-false-narrative declarations, profiling consumers for litigation without disclosure, and failure to respond to Plaintiff's NDPA rights request—constitute unfair and unconscionable means. The NDPA's profiling provisions confirm that undisclosed profiling presents a heightened risk of harm.

107. Resurgent processes consumer data at a scale that, if conducted by any entity that acknowledged its function, would trigger CRA obligations under the FCRA. Its failure to comply with those obligations while performing CRA functions is independently unfair under § 1692f.

## COUNT VI

### Violation of FDCPA § 1692g — Failure to Validate Debt

*(On Behalf of All Classes)*

108. Plaintiff incorporates by reference all preceding paragraphs.

109. Resurgent, as the debt collector actually managing and directing the collection, was obligated to provide a § 1692g(a) notice identifying itself as the debt collector. Resurgent never sent any such notice. To the extent any validation notice was included in the collection complaint, it was attributed to LVNV—not to Resurgent.

110. On February 6, 2026, Plaintiff sent Resurgent a written dispute and demand for verification pursuant to 15 U.S.C. § 1692g(b). Resurgent has failed to provide verification and failed to cease collection activity as required.

## COUNT VII

### Violation of FCRA § 1681s-2(b) — Failure to Conduct Reasonable Investigation

*(On Behalf of the FCRA Investigation Subclass)*

111. Plaintiff incorporates by reference all preceding paragraphs.

112. Upon receipt of notice from the consumer reporting agencies, Resurgent is required to conduct a reasonable investigation under § 1681s-2(b). Any investigation conducted through the same data systems that produced four false Kelly Booth declarations, a false chain-of-title affidavit, and incorrect card agreements is not a "reasonable" investigation. Resurgent's violations are willful. Resurgent knows its data systems have produced four false declarations in Plaintiff's case alone.

## COUNT VIII

### Violation of the Nebraska Collection Agency Act

*Neb. Rev. Stat. §§ 45-601 et seq.*

*(On Behalf of the Nebraska Class)*

113. Plaintiff incorporates by reference all preceding paragraphs.

114. Resurgent is a "collection agency" within the meaning of Neb. Rev. Stat. § 45-602(2)(a). When Resurgent employees who hold (or should hold) solicitor's certificates under Resurgent's license prepare declarations identifying themselves solely as "agents of LVNV Funding LLC," they operate outside the statutory framework that makes their collection activity lawful. They are acting not "for the licensee named in the certificate" (Resurgent), but in the name of the licensee's client (LVNV).

115. Pursuant to Neb. Rev. Stat. § 45-608, Resurgent is required to maintain a surety bond, and an action may be brought upon such bond by any person who has been damaged by failure of the licensee to comply with the Act.

116. To the extent Messerli and other law firms filing collection actions in Nebraska at Resurgent's direction are operating under Resurgent's management, the attorney exemption under Neb. Rev. Stat. § 45-602(3)(i) does not apply.

## COUNT IX

### Violation of the Nebraska Consumer Protection Act

*Neb. Rev. Stat. §§ 59-1601 et seq.*

*(On Behalf of the Nebraska Class)*

117. Plaintiff incorporates by reference all preceding paragraphs.

118. Resurgent's conduct constitutes unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Neb. Rev. Stat. § 59-1602. Plaintiff and the Nebraska Class are entitled to actual damages, treble damages for willful violations under Neb. Rev. Stat. § 59-1609, and such further relief as the Court deems appropriate.

## COUNT X

## Violation of the Nebraska Uniform Deceptive Trade Practices Act

*Neb. Rev. Stat. § 87-302*

*(On Behalf of the Nebraska Class)*

119. Plaintiff incorporates by reference all preceding paragraphs.

120. Resurgent's conduct constitutes deceptive trade practices in violation of Neb. Rev. Stat. § 87-302, including causing a likelihood of confusion or misunderstanding as to the source, sponsorship, and affiliation of services.

## COUNT XI

## Abuse of Process

*(On Behalf of the Nebraska Class)*

121. Plaintiff incorporates by reference all preceding paragraphs.

122. Resurgent, through LVNV and its directed attorneys, caused legal process to be used for an ulterior purpose. After invoking the court's jurisdiction by filing for summary judgment, Resurgent caused a motion to compel arbitration to be filed for the improper purpose of defeating potential class action claims. Resurgent knew the arbitration right had been waived by LVNV and extinguished by Citibank's assignment. Resurgent caused the motion to be filed anyway because arbitration would eliminate class exposure.

## COUNT XII

### Concerted Tortious Conduct — Aiding and Abetting

*(On Behalf of All Classes and Subclasses, Against All Defendants)*

123. Plaintiff incorporates by reference all preceding paragraphs.

124. Under Restatement (Second) of Torts § 876, each Defendant is liable for harm resulting from their concerted tortious conduct. Sherman designed the corporate architecture that enables the concealment. LVNV served as the nominal plaintiff enabling the scheme. Resurgent prepared the false declarations and directed all collection activity. Messerli and the Doe Law Firm Defendants filed the concealing complaints and declarations in Nebraska courts. Each Defendant knew or should have known that Resurgent was the entity actually directing the collection and that declarations were being filed without disclosure of Resurgent's role.

## COUNT XIII

### Willfulness

*(Applicable to All Counts)*

125. Plaintiff incorporates by reference all preceding paragraphs.

126. Defendants' violations were willful. Resurgent designed its business to be invisible. Sherman built the corporate architecture and workflow architecture to enable the concealment. The identity concealment is not a mistake—it is the business model. The data processing is not incidental—it is the core of Resurgent's operations. The declaration deficiencies are not isolated errors—they are the predictable output of a system designed for volume and conversion of accounts into revenue, not accuracy. Defendants are liable for enhanced damages under both the FDCPA and FCRA.

## CLASS ACTION ALLEGATIONS

127. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of herself and all others similarly situated.

### Class Definitions

128. Plaintiff seeks to represent the following Classes and Subclasses:

> "Nationwide Class:" All consumers in the United States against whom Resurgent caused to be filed an affidavit, declaration, or similar sworn document in connection with debt collection within one year prior to the filing of this action, or such earlier period as is warranted by equitable tolling based on Resurgent's fraudulent concealment.

> "Robo-Signing Subclass:" All Nationwide Class members against whom Resurgent caused to be filed a declaration or affidavit prepared by a person other than the named declarant or affiant.

> "False Chain of Title Subclass:" All Nationwide Class members against whom Resurgent caused to be filed chain-of-title documents not accurately reflecting the consumer's account.

> "Wrong Agreement Subclass:" All Nationwide Class members against whom Resurgent caused to be filed a declaration attaching a card agreement that was not the agreement governing the consumer's account.

"False Opt-Out Subclass:" All Nationwide Class members against whom Resurgent caused to be filed a declaration stating the consumer failed to opt out of arbitration when the governing agreement contained no opt-out provision.

"Identity Concealment Subclass:" All Nationwide Class members against whom Resurgent directed collection activity through LVNV without disclosing Resurgent's role as the collection agency actually managing the claim.

"Profiling Subclass:" All Nationwide Class members whose accounts were processed through Resurgent's algorithmic profiling and litigation-routing pipeline, including but not limited to third-party scoring tools such as Experian's PriorityScore for Collections and Resurgent's proprietary decision engine, without notice, without the opportunity to opt out, and without a data protection assessment as required by the Nebraska Data Privacy Act.

"Credit Reporting Subclass:" All Nationwide Class members whose accounts were reported by Resurgent to one or more consumer reporting agencies without the "disputed" flag after the consumer disputed the debt.

"FCRA Investigation Subclass:" All Nationwide Class members who disputed the LVNV/Resurgent tradeline through a consumer reporting

agency and whose disputes were investigated by Resurgent using the same data systems that produced the false declarations.

"Nebraska Class:" All Nebraska consumers against whom Resurgent caused to be filed an affidavit, declaration, or similar sworn document in connection with debt collection within the Class Period, for claims under the Nebraska Collection Agency Act, the Nebraska Consumer Protection Act, and the Nebraska UDTPA.

**Numerosity**

129. The members of the Classes are so numerous that joinder is impracticable. LVNV, through Resurgent, filed approximately 9,814 collection lawsuits in Nebraska alone in 2025. The Nationwide Class is estimated to include tens of thousands of consumers or more. Class members are readily identifiable from Resurgent's own records.

**Commonality**

130. Common questions of law and fact predominate, including: (a) whether Resurgent is a "debt collector"; (b) whether Resurgent's declaration preparation practices violate § 1692e; (c) whether Resurgent's concealment violates § 1692e(14); (d) whether Resurgent's undisclosed profiling constitutes unfair or deceptive means under §§ 1692e(10) and 1692f; (e) whether named declarants personally review each

declaration; (f) whether Resurgent's investigation of disputes through the same data systems constitutes a "reasonable investigation"; and (g) whether Resurgent's concealment tolls the applicable statutes of limitations on a class-wide basis.

**Typicality**

131. Plaintiff's claims are typical. Plaintiff's experience with four successive false declarations exposed the system that operates on every Class member. Every Class member received declarations from the same affidavit mill, processed through the same templates, signed by the same pool of declarants, and produced by the same unreliable data systems. These unreliable data systems impact the Class Members in life changing ways by damaging their credit worthiness and credit scores.

**Adequacy**

132. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests antagonistic to the Classes and is represented by counsel experienced in consumer protection class action litigation.

**Predominance and Superiority**

133. The FDCPA is a strict liability statute with no reliance element. The common question is whether Resurgent's workflow process violates § 1692e,

answerable by examining Resurgent's procedures—not each Class member's individual experience. Statutory damages are calculated and Congress contemplated on a statutory basis damages for class claims § 1692k(a)(2)(B). Class action statutory damages are a single lump sum — "such amount as the court may allow for all such class members without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." Individual actions are impracticable because FDCPA damages are capped at $1,000 per individual. Resurgent's concealment prevents individual action—class members do not know Resurgent exists.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that this Court:

(a) Certify the Classes and Subclasses, designate Plaintiff as Class representative, and appoint Plaintiff's counsel as Class Counsel;

(b) Enter judgment in favor of Plaintiff and the Classes on all counts;

(c) Award statutory damages pursuant to 15 U.S.C. § 1692k;

(d) Award actual damages sustained by Plaintiff and Class members;

(e) Award statutory damages of $100 to $1,000 per Class member for as many violations as are subsequently discovered, actual damages, and punitive damages under 15 U.S.C. § 1681n for willful FCRA violations;

(f) Award treble damages for willful violations under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1609;

(g) Award damages on the surety bond maintained by Resurgent pursuant to Neb. Rev. Stat. § 45-608;

(h) Enter injunctive relief requiring Resurgent to: (i) cease preparing declarations attributed to persons who did not personally prepare them; (ii) disclose Resurgent's identity in all collection

communications, filings, and declarations; (iii) cease undisclosed consumer profiling and comply with the NDPA's opt-out and data protection assessment requirements; (iv) comply with all FCRA furnisher obligations; and (v) correct all tradelines to accurately disclose Resurgent as the entity managing LVNV accounts;

(i) Enter a declaratory judgment that debts collected or judgments obtained through collection activity directed by Resurgent in which Resurgent's identity was concealed were obtained in violation of the FDCPA;

(j) Enter a declaratory judgment that Resurgent's systematic concealment constitutes fraudulent concealment tolling the applicable statutes of limitations on a class-wide basis;

(k) Award reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(3), 1681n(a)(3), and applicable state law;

(l) Order Messerli & Kramer, P.A. to disgorge all fees received from Resurgent or LVNV in connection with collection actions in which Resurgent's identity was concealed;

(m) Award pre-judgment and post-judgment interest as allowed by law; and

(n) Grant such other and further relief as this Court deems just and proper.

-

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ Paul D. Heimann

Paul D. Heimann, #21727
THE ORR LAW GROUP, LLC
9375 Burt Street, Suite 200
Omaha, Nebraska 68114
Telephone: (402) 408-6488
paulh@orrlawgrp.com
*Attorney for Plaintiff and the Proposed Classes*